UNITED STATES of America,
Plaintiff,

v.

Antwann McBRIDE, Defendant.

Case No. 09–CR–235.

United States District Court,
E.D. Wisconsin.

June 7, 2011.

Erica N. O'Neil, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, for Plaintiff.

Michael L. Chernin, Chernin Law Office, Milwaukee, WI, for Defendant.

### SENTENCING MEMORANDUM

LYNN ADELMAN, District Judge.

Defendant Antwann McBride pleaded guilty to possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), and possessing marijuana with intent to distribute, 21 U.S.C. §§ 841(a)(1) & (b)(1)(D), and I set the case for sentencing. In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then decide any guideline departure motions, and, finally, determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). *See Rita v. United States,* 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). This memorandum sets forth the reasons for my determinations.

## I. GUIDELINES

On the firearm count, defendant's pre-sentence report ("PSR") set a base offense level of 20, as defendant committed the instant offense subsequent to sustaining a felony conviction for a crime of violence, U.S.S.G. § 2K2.1(a)(4)(A); added 2 levels because the firearm was stolen, § 2K2.1(b)(4)(A), and 4 levels because defendant possessed the firearm in connection with another felony offense, i.e., the marijuana count, § 2K2.1 (b)(6); for an adjusted level of 26. On the marijuana count, the PSR set a base offense level of 10, as defendant possessed just under 2.5 kg of marijuana, U.S.S.G. § 2D1.1(c)(15), then added 2 levels based on defendant's firearm possession, § 2D1.1(b)(1), for an adjusted level of 12. The PSR grouped the two counts under U.S.S.G. § 3D1.2(c), then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 23. Turning to defendant's criminal history, the PSR imposed 3 criminal history points for defendant's 1992 conviction of armed robbery, on which the court sentenced him to 5 years in prison, and 1 point for defendant's 2002 violation of a domestic abuse order conviction, on which he received 35 days in jail.[1] Given his total of 4 points, the PSR set a criminal history category of III, which, combined with the offense level of 23, produced an imprisonment range of 57–71 months. The parties agreed with these calculations, which I found correct and adopted accordingly.

## II. DEPARTURE

The government moved for a departure under U.S.S.G. § 5K1.1 based on defendant's substantial assistance. In ruling on such a motion, the district court considers:

(1) ... the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; [and]

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a). The court should give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n. 3, but the extent of the departure is a matter within the court's discretion. In attempting to quantify such a departure, I typically use the method suggested by the Seventh Circuit of granting something on the order of a 2–level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. *E.g., United States v. Seib,* 555 F.Supp.2d 981, 985 (E.D.Wis.2008); *United States v. Matthews,* 463 F.Supp.2d 916, 918 (E.D.Wis.2006).

In the present case, the government sought a 3 level reduction, indicating that defendant started cooperating even before making his initial appearance in this case. In the fall of 2009, he participated in two debriefs, providing information about his own involvement in drug trafficking and about the involvement of others in related cases. He provided specific information in a four-defendant case charged in this district, in which his debriefs were released in

---

1. Defendant's 1998 misdemeanor receiving stolen property conviction, on which he was sentenced to probation, and his 1998 misdemeanor marijuana possession conviction, on which he was sentenced to 10 days jail, were too old to score criminal history points in this 2009 case. *See* U.S.S.G. § 4A1.2(e)(2).

redacted form and used to calculate relevant conduct. Based in part on his information, those defendants pleaded guilty. In addition, defendant provided information which led to the arrests of two other individuals, one of whom was charged with felon in possession, the second with carrying a concealed weapon.[2]

Under the first § 5K1.1 factor, I awarded 1 level, as defendant's assistance was significant and useful in the cases mentioned; 2 levels was not warranted, as it did not appear that his assistance was critical or crucial in these cases. I awarded 2 levels under the second factor, as the government found defendant's information truthful and complete, consistent with corroborating evidence obtained from other sources. I awarded 1 level under the third factor, as the assistance consisted of debriefing and agreeing to testify; he did not actually testify or engage in pro-active cooperation. I awarded no reduction under the fourth factor, as there was no specific evidence of danger, risk, or injury. However, I did award 1 level under the fifth factor, as defendant started cooperating immediately, even before he appeared in court; there was no evidence that the timeliness was particularly significant in any case, so I declined to award 2 under this factor. Therefore, I granted a total reduction of 5 levels, producing a range of 33–41 months.

### III. SECTION 3553(a)

#### A. Sentencing Factors

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute requires the court to then "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." *Id.*

■ Although the court must in determining a sufficient sentence give respectful consideration to the guidelines' recommendation, it may not presume the appropriateness of a guideline term. *See Nelson v. United States,* 555 U.S. 350, 129 S.Ct. 890, 892, 172 L.Ed.2d 719 (2009). Rather, the court must consider all of the § 3553(a) factors in tailoring a sentence that fits the offense and the offender. *See Pepper v. United States,* — U.S. ——, 131 S.Ct. 1229, 1241, 179 L.Ed.2d 196 (2011) (citing *Kimbrough v. United States,* 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)).

---

**2.** I provided more specifics regarding the cases in which defendant cooperated on the record.

## B. Analysis

### 1. The Offense

On July 15, 2009, police executed a search warrant at defendant's residence based on information obtained through a wiretap in another case. Officers seized about 2500 grams of marijuana, drug paraphernalia, cash, ammunition, and a .40 caliber pistol (which had been reported stolen). In a post-arrest statement, defendant admitted buying the gun on the street for $350 but denied knowing it was stolen. He also admitted that he obtained about 5 pounds of marijuana for resale.

### 2. The Defendant

Born in Mississippi in 1975, defendant endured a difficult childhood with an abusive father who drank too much and physically assaulted defendant's mother. Defendant's mother confirmed the abuse, stating that she and the children lived as prisoners in their own home. She stated that defendant's father beat her with pistols, threatened to shoot her, and locked the children in their rooms. Not surprisingly, defendant later developed his own problems with domestic violence and substance abuse, repeating his father's pattern.

In 1991, an older acquaintance persuaded defendant, then age fifteen, to participate in an armed robbery in which they took a woman's purse at gun-point. Prosecuted as an adult, a Mississippi state court sentenced defendant to five years in prison. Released from that sentence in 1996, defendant was convicted of misdemeanor receiving stolen property and marijuana possession in 1998. In 2002, he was convicted of violating a domestic abuse injunction. He managed to avoid any further brushes with the law until his arrest in this case in 2009.

Following his release on bond in this case, defendant submitted a urinalysis test positive for marijuana, after which he was referred—apparently for the first time—for substance abuse counseling. Defendant admitted to a twenty year history of using drugs, smoking up to ten "blunts" per day. Defendant's counselor indicated that defendant cooperated in treatment and no longer wanted to be an addict. All of his screens in the following eighteen months prior to sentencing were negative, and he complied with all of his other conditions of pre-trial release.

Defendant had three young children with his girlfriend, and she stated that he was a good father. She confirmed past abuse in their relationship but stated that he had made efforts to change. Concerned that defendant would be sentenced to prison and leave her to raise their children alone, during the pendency of this case defendant's girlfriend relocated to Indiana to be closer to her sisters. However, defendant advised that he had persuaded her to return to Wisconsin to raise their family together. And given defendant's conduct over the past two years, his prospects of being a good father seemed stronger. Defendant started a new career as a stand-up comedian, and I permitted him to travel to other states pursuing that vocation. He also obtained a job as an account executive and part-time on-air personality for a local radio station. At sentencing, counsel indicated that defendant appeared to have found his calling, transforming his painful life experiences into a successful routine.

### 3. The Sentence

 The guidelines recommended 33–41 months in prison, after the departure. Because the guidelines overemphasized the nature and seriousness of defendant's prior record, overstated the severity of the instant offense, and failed to account for his vastly improved future prospects, I found that recommendation greater than

necessary to satisfy the purposes of sentencing. Instead, and considering all the circumstances, I found a sentence served in the community appropriate.

### a. Defendant's Prior Record

Defendant's prior conviction for armed robbery distorted the guidelines' recommendation. Ordinarily, I would agree that an armed robbery conviction suggests a greater risk with a gun and should result in a significantly longer sentence in a felon-in-possession case. Here, however, defendant committed the robbery at age fifteen. It was unclear to me why he was prosecuted as an adult at such a young age, particularly given his lack of any previous juvenile adjudications and what appeared to be his inferior role in the crime. Whatever the rationale, the decision to prosecute as an adult—and the 5 year prison sentence imposed—had a significant impact. Not only did the robbery conviction serve as the predicate felony for the felon in possession count, it produced 3 of defendant's 4 criminal history points and increased the base offense level from 14 to 20. This conviction perhaps deserved some weight, but not that much; defendant, now age thirty-five, had no record of similar misconduct in the intervening two decades.[3]

### b. The Instant Offense

The guidelines contained significant enhancements for possession of the gun in connection with another felony, U.S.S.G. § 2K2.1 (b)(6), and for possession of a stolen weapon, § 2K2.1(b)(4)(A), which overstated the seriousness of the instant offense. First, the record contained no evidence that defendant ever used, threatened to use, or displayed the gun, in connection with his drug dealing or otherwise. The firearm was found in defendant's residence—he was not carrying it around on his person or in his car—and his girlfriend indicated that they had the weapon for protection of their home. The presence of marijuana was, of course, an aggravating factor, but the amount involved was modest, and the record indicated that defendant was a very low-level dealer. Second, the stolen weapon enhancement applied even though there was no evidence that defendant knew the gun was stolen. Section 2K2.1 (b)(4) produces strict liability increases for stolen guns or guns with obliterated serial numbers, which is something the court can consider in imposing an individualized sentence under § 3553(a). *See United States v. Johnson,* No. 10–CR–98, 2010 WL 4683546, at *3 (E.D.Wis. Nov. 12, 2010) (citing *United States v. Jordan,* 740 F.Supp.2d 1013, 1016 (E.D.Wis.2010)).

### c. Post–Offense Rehabilitation

Most significantly, the record contained significant evidence of post-offense rehabilitation, which suggested that a sentence served in the community would suffice to deter and protect the public from future crimes of the defendant. First, it appeared that defendant's cooperation represented more than a mercenary effort to obtain a lower sentence. Rather, it appeared that he wanted to atone for his mistakes and cut ties with former criminal associates. Second, defendant made sincere efforts to deal with his substance abuse and domestic issues. He participated in drug treatment, submitting negative screens for a year and a half, and demonstrated genuine insight into how his experiences growing up with an abusive father had impacted his own relationships with women. He also made efforts to reunite with his girlfriend and children, and to fulfill his responsibilities as a father. Third, despite having this case hanging over his head, defendant made significant professional progress, pursuing a career as a stand-up comedian and radio personality.

---

**3.** As noted, defendant's other prior convictions dated from 1998 and 2002.

In my experience, defendants facing a prison sentence often decline to seek and maintain employment in any form, let alone make the sort of efforts this defendant did.

## IV. CONCLUSION

Under all the circumstances, I found a sentence of 5 years probation, with a condition of 180 days home confinement, sufficient but not greater than necessary. This sentence provided sufficient punishment for defendant's involvement with drugs and guns; sufficient monitoring to ensure public protection and deterrence; but allowed defendant to remain in the community, working and supporting his children. As further conditions of probation, I required defendant to attend to his child support obligations and, in lieu of a fine, perform community service. Other terms and conditions of the sentence can be found in the judgment.